# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2168 | **DATE** | 9/23/2002 |
| **CASE TITLE** | Rasche vs. Village of Beecher, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment [30-1] is granted. Judgment entered in favor of defendants and against plaintiffs.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 24 2002 date docketed | 40 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/23/2002 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROGER RASCHE and VELMA RASCHE, ) | |
| ) | |
| Plaintiffs, ) | **DOCKETED** |
| ) | SEP 2 4 2002 |
| vs. ) | No. 00 C 2168 |
| ) | |
| VILLAGE OF BEECHER, an Illinois ) | Judge Joan H. Lefkow |
| Municipal Corporation, and ) | |
| PAUL LOHMANN, individually and as Agent ) | |
| for the VILLAGE OF BEECHER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Roger and Velma Rasche (collectively the "Rasches"), bring this law suit against defendants Village of Beecher, a municipal corporation ("the Village"), and Paul Lohmann ("Lohmann"), in his individual and official capacities pursuant to 42 U.S.C. §§ 1983 and 1988 alleging violations of their First and Fourteenth Amendment rights. Before the court is defendants' motion for summary judgment. The court has jurisdiction over the claims pursuant to 28 U.S.C. § 1343. For the reasons set forth below, the court grants defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee Notes. The party

40

seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS[1]

Roger Rasche owns Rasche Towing, a towing business located on Route 1 (also known as Dixie Highway) in Beecher, Illinois. Roger's wife, Velma, works at Rasche Towing but receives no actual salary. The Village is a municipal corporation organized under Illinois law. Lohmann serves as Village President.

In 1997, the Village Board of Trustees (the "Board") and Lohmann proposed that the Village purchase the Shady Lawn Golf Course using revenue bonds as funding. On or about November 10, 1997, the Village passed an ordinance authorizing the issuance of revenue bonds

---

[1]The facts set forth below are taken from the parties Local Rule 56.1 Statements and read in the light most favorable to plaintiff, the nonmovant. The court notes that neither party followed the court's directive regarding summary judgment deposition testimony evidence, available on the Northern District of Illinois website under this court's case management procedures. See Case Management Procedures, *available at* http://www.ilnd.uscourts.gov/JUDGE/LEFKOW/jhlpage.htm. The directive requires parties to provide the court with an entire transcript of deposition testimony if not particularly voluminous. If the entire transcript cannot be submitted, the parties are required to provide at least 10 pages of testimony before and after the proffered testimony. As will be noted herein, this is particularly relevant to the testimony offered in this case.

2

for the purchase. Roger publicly campaigned against the golf course's purchase. This public campaign, which Roger led, included a drive to have the matter submitted to a referendum vote. On March 17, 1998, a referendum was held, and voters defeated the golf course proposal.

In late 1998 and early 1999, defendants proposed additions to the Village's water system. In May 1999, the Village passed an ordinance authorizing the issuance of water works and sewage revenue bonds. Velma participated in a petition drive against the ordinance. This petition drive resulted in the bond proposal being placed on a referendum ballot. Voters rejected the bond proposal on or about March 21, 2000, thereby defeating the Village's proposed additions to the water system.

Beginning during 1997, the Board expressed concern over the appearance of properties along Route 1. During a July 28, 1997 meeting, the Board discussed enforcement of codes regarding the placement of temporary signs in the Village. (Def. L.R. 56.1 ¶ 27.) A motion was made to "authorize enforcement of the Sign Ordinance pertaining to temporary signs in the Village." (*Id.*) All affected property owners were sent a letter informing them that a public meeting was being held regarding temporary signs in the Village.

The public meeting was held on October 23, 1997. Roger Rasche attended. At the meeting, the Village Administrator, Robert Barber ("Barber"), expressed concern about "marquee type" signs that appeared portable. Barber discussed signs located at Roger Rasche's property in addition to signs located on the Shady Lawn Golf Course, Bahlmann's Service, Loitz Auto Sales, Galaxy Home Interiors, R.L. Reising Auto Sales, Beecher Sports Collectibles, and the Beecher Fitness Center. (Def. L.R. 56.1 ¶ 35.)

In Spring 1999, the Village appointed Julie Riechers ("Riechers") as its Code Enforcement Officer, a position not previously filled. In conjunction with her duties, Riechers was directed to find any code violations and speak with the owners. Plaintiffs maintain that in a Spring 1999 meeting with Lohmann and Barber, Riechers was specifically directed to look at the Rasches' sign as a code violation. (Pl. L.R. 56.1 ¶¶ 7-8.) Throughout 1999, Riechers sent letters to property owners along Route 1 regarding their signs and requested that they be removed. (Def. L.R. 56.1 ¶ 62.) Riechers completed reports dated from June 1999 to May 2000 which detail approximately sixty actions she took in connection with code enforcement. (Def. L.R. 56.1 ¶ 70.)

At or around this time, the Board enacted an ordinance creating a local adjudication system to handle ordinance violations. Thomas Knuth ("Knuth"), Village Attorney, drafted this local adjudication system. According to plaintiffs, Knuth sent a letter to the Village Police Chief, Mark DiSanto ("DiSanto"), dated May 18, 1999, which provided DiSanto with a list of violations that could be prosecuted under the ordinance. (Pl. Resp. to Def. L.R. 56.1 ¶ 21.) A copy of this letter was also sent to Barber. (*Id.*)

Beginning during the summer of 1999, plaintiffs were issued numerous warnings and citations regarding alleged ordinance violations. On July 9, 1999, plaintiffs received a warning about a flashing sign located on their property.[2] Also on July 9, plaintiffs received a ticket for

---

[2] Roger Rasche purchased this sign in 1978. No permit was obtained for the sign's installation at that time. The sign had wheels on it, which were placed upside down. Rasche set the sign on his property and placed the pedestal portion on which the wheels are located on bricks, which were not a foundation. The sign was affixed to the ground only by a play swing cable, and the sign was wrapped in chicken wire to prevent the letters from blowing off. The sign, which had flashing lights, was supplied with power by an extension cord running from a garage on the Rasche property. The Village maintained that the sign violated an ordinance passed in 1974. This ordinance defined exactly what a sign was and provided that a building permit was required for the erection and construction of any sign. The zoning ordinance was amended in 1992 to define a flashing sign, provide standards for outdoor signs, disallow flashing signs in business districts, and set requirements so signs could withstand wind pressure up to thirty pounds per square foot.

4

not having a Village sticker on their motor home and for open storage of automobiles in their front yard.

On August 9, 1999, plaintiffs received a ticket for the sign on their property that allegedly violated the Village's sign ordinance. Plaintiffs received another ticket for the sign on August 20, 1999. On October 1, 1999, plaintiffs received a warning about a motor home parked on their property. On December 13, 1999, plaintiffs received a ticket for having an inoperable vehicle on their property in violation of Village ordinances. On January 5, 2000, plaintiffs received another seven tickets for having inoperable vehicles in their front yard.[3]

Initially, Roger Rasche was prosecuted under the local adjudication system. The Village adjudicatory officer dismissed all the citations issued to Rasche for the sign and inoperable vehicles. Plaintiffs maintain that the officer dismissed the citations because they were not among the violations that could be prosecuted through the local adjudication system. (Pl. Resp. to Def. L.R. 56.1 ¶ 23.) Defendants maintain that the adjudicatory officer dismissed the ordinances because he made a not guilty finding, due to the fact that the sign no longer flashed, the wrong statutory section was listed for the alleged installation without a permit, and Roger Rasche "was trying" to keep his inoperable automobiles away from the front yards. (Def. Resp. to Pl. L.R. 56.1 ¶ 23.) In either event, in early 2000 the Village repealed the ordinance creating the local adjudication system. Thereafter, Attorney Knuth prosecuted all ordinance violations in state court (Pl. L.R. 56.1 ¶ 42.)

---

[3]The Village maintained that Rasche's property has two front yards because it is along an intersection of two streets, and Rasche admits that all vehicles, with the exception of one on the borderline, were located within what the Village maintained was Rasche's front yard. Jody's Transmission Service, also located on Route 1, was issued twenty-nine citations for inoperable vehicles parked in its front yard for more than seven days. (Def. L.R. 56.1 ¶ 83.)

5

On January 12, 2000, the Village filed a two-count complaint against Roger Rasche, alleging that the sign was erected and the electrical connection was installed without required building permits. (Pl. Resp. to Def. at 2.) The state court subsequently granted Roger's motion for a directed verdict.

In April 2000, plaintiffs filed this law suit against Lohmann and the Village alleging that the defendants issued the citations and warnings in retaliation for plaintiffs' exercise of their First Amendment rights in opposition to the golf course and water works revenue bonds.

## DISCUSSION

In order to prevail on a § 1983 claim,[4] a plaintiff must establish that the defendant deprived him of a constitutional or federal right and that the defendant acted under color of state law. *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000) (citations omitted).[5] For claims against an individual defendant under § 1983, plaintiffs must show evidence that the defendant was personally involved in the alleged constitutional deprivation. *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996). First Amendment retaliation claims under § 1983 are decided using a three-step analysis. First, the court must decide if the speech was

---

[4]Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[5]Lohmann is also sued in his official capacity, but because claims against individuals in their official capacities are suits against the municipality, *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001), citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985), we need only address the individual capacity claim to resolve the motion.

6

constitutionally protected.[6] *Vukadinovich v. Board of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). If the speech was constitutionally protected, then the plaintiff must show that the constitutionally protected speech motivated defendants' actions. *Id.* If the plaintiffs can show that their constitutionally protected speech was a motivating factor, then the defendants can prove that they would have taken the same action even without plaintiffs' exercising their First Amendment rights. *Id.*

Defendants assert that summary judgment is appropriate because there is no genuine dispute concerning the following facts: (1) Lohmann was not personally involved in the alleged constitutional deprivation; (2) the alleged retaliatory actions cannot be attributed to the Village because they were not taken by a person with final policymaking authority; and (3) plaintiffs cannot show that their constitutionally protected speech was a motivating factor in defendants' actions.[7] Because the court agrees with defendants on the first two issues, it is unnecessary for the court to reach the third.

"Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Sheik-Abdi v. McCleellan*, 37 F.3d 1240, 1248 (7th Cir. 1994). The test for establishing personal liability was set forth in *Vance*:

---

[6] Neither party disputes that the speech at issue in this case was constitutionally protected.

[7] Defendants also argue that Velma Rasche lacks standing because she did not have any ownership interests in the business and none of the citations were issued against her. The facts indicate that Velma has an ownership interest because Rasche Towing may be a family business. Also, because Velma asserts that defendants retaliated against *her* First Amendment rights, she has standing to assert an injury sustained as a result. Unlike *Shanahan v. City of Chicago*, 82 F.3d 776 (7th Cir. 1996), on which defendants rely, where the plaintiff attempted to bring claims on behalf of third parties, *id.* at 780, here Velma asserts her own claim, not that of her husband.

7

> [A]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye . . . . In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery.

*Vance*, 97 F.3d at 993 (internal citations and quotations omitted).

Plaintiffs seek to establish Lohmann's personal liability in two ways: (1) by showing his presence at a meeting with Riechers and Barber, and (2) by a letter Knuth sent to DiSanto and Barber. The record establishes that in the Spring of 1999, Lohmann and/or Barber gave Riechers directions regarding enforcement of the sign ordinances along Route 1. While plaintiffs allege that at this meeting the only sign Lohmann told Riechers to specifically look at was Roger's sign, they present at best a scintilla of evidence of this fact. Plaintiffs rely on Riechers' deposition where she states that Barber and Lohmann did mention the Rasche sign as one they wanted Riechers to look at. A few lines later, however, Riechers retracted the statement and testified, "Actually, I think I'm going to take that back. I assumed this all on my own. I'm thinking about it. No one told me to deal with any particular thing. They just said go to Route 1, and pick out things that you think are in violation." (Riechers Dep. at 25-26.)[8] (Disappointingly, plaintiffs fail to acknowledge page 26 of Riechers' deposition testimony.) With no argument addressing the testimony, which fairly read is that Lohmann did not single out the Rasche property, there is no basis to infer retaliation based on this meeting.

---

[8]This is consistent with another portion of Riechers' deposition testimony. Riechers previously was asked if specific property owners along Route 1 were singled out for her to talk to. Riechers responded that there were not, and that she was to talk to all property or business owners along Route 1. (*Id.* at 20.)

8

Plaintiffs also attempt to show Lohmann's personal involvement on the basis that Barber allegedly knew that the Rasche sign was not prosecutable under the local adjudication system. According to plaintiffs, on May 18, 1999, Knuth sent a letter to DiSanto and Barber in which he enclosed a "Table of Offenses" listing existing ordinance provisions that Knuth believed could be charged under the ordinance proposal. (Pl. L.R. 56.1 ¶ 21, Ex. 51.) Plaintiffs allege that this letter gave Barber knowledge that the adjudication ordinance proposal did not cover the Rasches' sign and thus illustrates that the citations issued after the ordinance was passed were simply retaliatory efforts. Plaintiffs argue that on the basis of Barber's alleged knowledge, an inference can be made that Lohmann was also aware.

Plaintiffs' attempt to use the letter to impute knowledge to Barber, and ultimately Lohmann, is unpersuasive. As an initial matter, although the letter does say that a "Table of Offenses is enclosed," this table is not included as part of plaintiffs' exhibit. Thus, plaintiffs provide no evidence that the letter gave either DiSanto or Barber notice that the citations issued to plaintiffs were outside the adjudication ordinance's coverage. Moreover, even if this letter did demonstrate that the Rasche citations were outside of the ordinance's coverage, to say that Lohmann saw this letter is pure speculation.

Although the record establishes that Lohmann was aware of the Village's efforts to enforce the sign ordinance along Route 1, plaintiffs provide no evidence that he was aware of any Village official's retaliatory motive and no evidence that Lohmann either directed the conduct or consented to it. *Vance*, 97 F.3d at 993.

For these reasons, summary judgment in Lohmann's favor will be granted. Because the facts read in a light most favorable to the plaintiffs do not create a genuine issue of material fact

9

that plaintiffs' constitutional right to free expression was denied, it is unnecessary to address the question of municipal liability.[9]

## CONCLUSION

For the reasons stated above, the court grants defendants' motion for summary judgment [#30]. The clerk is instructed to enter judgment in favor of the defendants.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 23, 2002

---

[9] Plaintiffs seem to argue that Riechers or DiSanto was a final policymaker that would make the Village liable, even though neither of these individuals is named as a defendant accused of depriving them of their rights. The only relevant question then is whether Lohmann was a final policymaker, and since he has prevailed on the motion, the Village likewise is not liable. Obviously, Riechers was not a final policymaker because all of the evidence indicates that she was an employee following her superiors' directions. DiSanto, as police chief, did not enact the sign ordinance, and it is undisputed that the concern about enforcement derived from the Board. There is absolutely no evidence that DiSanto was a final policymaker, to say nothing of the lack of evidence that he had a motive to retaliate against plaintiffs based on their exercise of protected speech.

10